UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )
v.                           )        No.:   3:14-CR-110-TAV-DCP-1
                             )
MALIK FIRST BORN ALLAH FARRAD, )
                             )
            Defendant.       )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's counseled emergency motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A) [Sealed Doc. 118] and supplement thereto [Doc. 119]. The government has responded [Sealed Doc. 121] and defendant has replied [Sealed Doc. 123]. For the reasons set forth more fully below, defendant's motion for compassionate release [Sealed Doc. 118] is **GRANTED**.

## I.    Background

On June 17, 2015, a jury found defendant guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) [Doc. 40]. Defendant was sentenced to 188 months' imprisonment, to be followed by 5 years of supervised release [Doc. 56]. On April 2, 2025, defendant was placed at the Midway Rehabilitation Center in Knoxville, and on June 20, 2025, defendant was transferred to home confinement for the remainder of his term [Sealed Doc. 121-1].

## I.      Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)).  The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception.  First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).  Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons.  Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.  18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in § 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

2

*Id.* Defendant seeks relief under § 3582(c)(1)(A)(i) [Sealed Doc. 118].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

## II.     Analysis

### A.     Exhaustion

The Court first examines whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct.

13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

In this case, the government concedes that the exhaustion requirement has been satisfied [Sealed Doc. 121, p. 2]. Accordingly, the Court will proceed to evaluate defendant's motion per the three-step test explained above.

### B.     Extraordinary and Compelling Reasons

Turning to whether defendant has set forth extraordinary and compelling grounds for relief, the Court first notes that the United States Court of Appeals for the Sixth Circuit previously held that "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement of § 1B1.13." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). This was so because the applicable policy statement, United States Sentencing Guideline § 1B1.13, as written at the time, did not contemplate inmate-filed motions for compassionate release, but instead, was limited to circumstances where the Bureau of Prisons filed a motion on an inmate's behalf. *Id.* at 1109–10; *see also* U.S. SENT'G GUIDELINES MANUAL § 1B1.13 (U.S. SENT'G COMM'N 2018).

However, the Sentencing Commission amended the policy statement in § 1B1.13, effective November 1, 2023, to encompass inmate-filed motions for compassionate release. U.S. SENT'G GUIDELINES MANUAL § 1B1.13 (U.S. SENT'G COMM'N 2023). It thus appears that the Sixth Circuit's prior ruling that § 1B1.13 is not an applicable policy statement to

inmate-filed motions for compassionate release is no longer consistent with the Guidelines. *See United States v. Nash*, No. 23-3635, 2024 WL 1979067, at *3 (6th Cir. Apr. 30, 2024) (noting the amendment to § 1B1.13 and stating that "prior to [the date of amendment], no guideline policy statement applied to compassionate-release motions brought by defendants, and a district court could deny a defendant-filed motion without reference to any policy statement"); *see also United States v. Ringgold*, No. ELH-17-232, 2023 WL 7410895, at *5–6 (D. Md. Nov. 8, 2023) ("[I]t appears that the Fourth Circuit's conclusion in *McCoy*, 981 F.3d at 281, to the effect that '§ 1B1.13 is not an 'applicable' policy statement,' is no longer consistent with the Guidelines. This is because the Policy Statement is now expressly applicable to defendant-filed motions pursuant to 18 U.S.C. § 3582(c)(1)(A)."). However, "[t]he new policy statement largely preserves the discretion district courts held to consider any extraordinary and compelling reason for release." *United States v. Davis*, No. 3:20-cr-16, 2023 WL 7356579, at *2 (W.D. N.C. Nov. 7, 2023).

As amended, § 1B1.13(b) states that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof," and discusses when the medical circumstances of the defendant, the age of the defendant, the family circumstances of the defendant, the defendant's victimization in custody, and other reasons may constitute extraordinary circumstances. U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(1)–(6) (U.S. SENT'G COMM'N 2025).

Defendant seeks relief under § 1B1.13(b)(3)(C) and/or § 1B1.13(b)(5) [Sealed Doc. 118]. Section 1B1.13(b)(3)(C) provides that certain family circumstances of the defendant

may constitute extraordinary and compelling reason for compassionate release, specifically, "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(3)(C) (U.S. SENT'G COMM'N 2025). Section 1B1.13(b)(5) states that extraordinary and compelling reasons may exist when a "defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."[1] U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(5) (U.S. SENT'G COMM'N 2025).

Defendant specifically seeks compassionate release to serve as a caretaker for his 67-year old mother who suffers from a complex history of serious health problems and is currently homeless [Sealed Doc. 118, p. 1]. Specifically, his mother suffers from a combination of medical conditions including a history of strokes, seizure disorder, a history of brain aneurisms, chronic obstructive pulmonary disorder, cirrhosis of the liver, dementia, vision loss, hearing loss, and hyponatremia [*Id.*]. She is also clinically underweight [*Id.* at 6]. Defendant particularly highlights that his mother's current housing situation is "exceptionally dire" as she is routinely forced to seek shelter in the back area of a tire shop owned by her nephew in South Carolina [*Id.* at 2, 11]. Defendant contends

---

[1] Paragraphs (1) through (4) referenced in § 1B1.13(b)(5) specifically address the "Medical Circumstances of the Defendant," "Age of the Defendant," "Family Circumstances of the Defendant," and "Victim of Abuse," grounds for compassionate release. U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b)(1)–(4) (U.S. SENT'G COMM'N 2025).

6

that he is the only available caregiver for his mother, as records indicate that his mother's niece and nephew, who had previously been providing some assistance, have been unable to care for her for the past several months, and the nephew has serious health issues of his own [*Id.* at 7, 11]. Defendant primarily seeks compassionate release to allow him to increase his work hours, and thereby his income, to provide a home for his mother [*Id.* at 2]. He also states that compassionate release would allow him to help his mother with grocery shopping, cooking, and preparing meals to ensure proper nutrition, transportation to medical appointments, medication management, laundry, and bathing and grooming [*Id.* at 10].

The government contests whether defendant's mother is "incapacitated" within the meaning of § 1B1.13(b)(3)(C), noting that the records show (1) defendant's mother has continued smoking and abusing substances and been noncompliant with prescribed medications; (2) at times she has displayed extreme agitation towards hospital staff; and (3) on one occasion she left the hospital against medical advice while stable housing was being sought for her [Sealed Doc. 121, pp. 3–4]. The government contends that "homelessness—and the frailty, filth, and dishevelment common among the homeless—does not equal incapacitation [*Id.* at 4]. Further, the government points out that defendant primarily seeks to provide financial support to his mother [*Id.*].

In essence, the government contests whether defendant has established either of the requirements of § 1B1.13(b)(3)(C) [*Id.*]. But the government does not address defendant's contention that extraordinary and compelling reasons for compassionate release exist under

7

the policy statement's catch-all provision, based on the combination of factors present here. Ultimately, the Court finds it unnecessary to determine whether defendant has met all of the requirements of § 1B1.13(b)(3)(C), because he has shown a combination of circumstances that rise to the level of extraordinary and compelling under § 1B1.13(b)(5).

The most critical factor to the Court's determination is defendant's mother's health and housing status. Defendant has submitted medical records indicating that his mother has a medical history including, among other things, acute respiratory failure, brain aneurysm, essential hypertension, bipolar disorder, carotid artery disease, chronic obstruction pulmonary disease, chronic systolic heart failure, cerebral vascular accident, dementia, strokes, hypokalemia, hyponatremia, hypothyroidism, seizures, and cirrhosis [Sealed Doc. 118-1, pp. 8, 13, 19]. She is also "legally blind" [*Id.* at 20]. Further, defendant's mother is clinically underweight for an adult over 65 years old, with a BMI of 20.43 [*Id.* at 115]. The medical records confirm that defendant's mother has been hospitalized multiple times this year alone [*See generally* Sealed Doc. 118-1]. And, in a supplemental filing, defendant indicates that his mother has again been hospitalized during the pendency of this motion, although he has not yet been able to obtain the medical records from this hospitalization [Doc. 119, p. 2].

In addition to her health concerns, which are both physical and mental, defendant's mother is facing a housing crisis. The medical records reflect that defendant's mother has been living in the back of her nephew, Charles's, tire shop, and must bathe with a hose in the back of the tire shop [Sealed Doc. 118-1, pp. 20, 92]. Defendant's mother has also

8

reported to medical staff that the bathroom is in the upstairs portion of the tire shop, and she cannot climb the stairs [*Id.* at 92]. During her multiple hospitalizations, medical staff have expressed concerns about discharging defendant's mother in light of her housing situation, but attempts to place defendant's mother in a care facility have been unsuccessful [*Id.* at 20, 284, 286, 288, 328, 342, 345, 367].

Moreover, it is clear that defendant's mother's current caretakers, her nephew, Charles, and her niece, Michelle, are either unable or unwilling to provide care to defendant's mother. During her multiple hospital visits, staff have consistently encountered difficulty contacting Charles or Michelle to discuss defendant's mother's health issues or discharge plans [*Id.* at 95, 284, 286, 311–12, 382–83]. On one occasion, medical records indicate that defendant's mother was "dropped off by niece" at the hospital with an altered mental status but the niece was not present at the time of the initial evaluation [*Id.* at 239–40]. At the initial evaluation, medical staff noted that defendant's mother was "extremely disheveled" and has "urinated on herself" and appeared to have "some dirt/stool on her feet or hands" [*Id.* at 240]. Medical staff ultimately contacted Charles who reported that he and his sister were "trying to take care of [her] to the best of their ability," but believed it "would be safer for [defendant's mother] to be placed in a facility at discharge" [*Id.* at 248–49]. When in contact with medical staff, Charles has repeatedly iterated that he and his sister were unable to care for defendant's mother, and that they desired defendant's mother to be placed into a care facility [*Id.* at 315, 345].

9

Accordingly, hospital staff have concluded that "[a]pparently family unable to take care of patient and will need placement" [*Id.* at 323].

In sum, defendant's mother is currently suffering from a combination of physical and mental ailments that seriously limit her ability to provide self-care, and at the same time, she is experiencing homelessness with essentially no family to support her in any manner.

In combination with these factors, the Court considers defendant's own rehabilitative efforts and custodial status. Defendant was in federal custody for this offense from November 19, 2014, until he was transferred to the Midway Rehabilitation Center on April 2, 2025 [Presentence Investigation Report ("PSR"), p. 2; Sealed Doc. 121-1, p. 1]. In other words, defendant served approximately 10 years and 4 months in physical custody at either the BOP or a local jail facility. During his time at the BOP, defendant took a number of courses, including, of particular relevance to the situation at hand, a number of health and nutrition related courses [Sealed Doc. 118-5, p. 1]. Additionally, defendant held a number of work positions while at the BOP, including several positions with UNICOR [Sealed Doc. 118-6].

That work experience has apparently served defendant well. After only a little over two months at the Midway Rehabilitation Center, on June 20, 2025, defendant was transferred to home confinement [Sealed Doc. 121-1, p. 1]. In its response, the government appears to acknowledge that this transfer to home confinement was a result of defendant's rehabilitative efforts [Sealed Doc. 121, pp. 6–7]. While on home confinement, defendant

10

has maintained employment with Aisin Automotive Casting Tennessee [Sealed Doc. 118, p. 2, n.2; Sealed Doc. 118-8]. Defendant has received overall positive reviews from his employer, who commented that defendant "is a solid team member who has done well since he started. He's learned the backwall machines quickly and keeps his area running smooth. Attendance has been good and he follows the rules" [Sealed Doc. 118-8, p. 2]. According to defendant, his employer has offered to immediately increase his hours if he is released from home confinement, but defendant is currently limited in the number of hours he can work due to the restrictions associated with his ankle monitoring system [Sealed Doc. 118, p. 2, n.2].

In summary then, defendant has served a significant amount of time in custody, is now on home confinement status, and has maintained compliance with all requirements to keep that home confinement status for over a year, during which he has maintained employment, indicating significant rehabilitation.

Finally, and perhaps one of the most critical components of the Court's analysis of defendant's rehabilitation, the Court notes that defendant's current release date is scheduled for July 23, 2027. Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/ (accessed June 30, 2026). Thus, defendant, currently on home confinement, has less than 13 months remaining, of his initial 188-month sentence, to be served, which would, absent any compliance issues, be served on home confinement.

The Court concludes that, taken together, the serious circumstances that defendant's mother faces as a result of her physical and mental health difficulties, her housing situation,

11

and her lack of family support combined with defendant's own rehabilitative efforts and current status on home confinement with only a few months remaining on his sentence constitute a combination of circumstances that are similar in gravity to those described in §§ 1B1.13(b)(1)–(4). Accordingly, the Court finds that defendant has established extraordinary and compelling grounds for release under § 1B1.13(b)(5). The Court now turns to the § 3553(a) factors.

### C. Section 3553(a) Factors

Section "3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). 18 U.S.C. § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

Considering the § 3553(a) factors in light of defendant's instant motion, the Court, after due consideration, finds that the balance of these factors do not preclude the granting

12

of compassionate release.  The Court has considered the nature and circumstances of the defendant's offenses and defendant's history and characteristics, including the defendant's personal characteristics, criminal history, and post-sentencing conduct.  The Court has also considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education and training, medical care, or other correctional treatment.  The Court has also considered the kinds of sentences available and the sentencing range, the need to avoid unwarranted disparities, and the need to provide restitution to any victims.

The Court recognizes the seriousness of this conduct.  However, the Court again notes that defendant has served a significant sentence of incarceration for his offense at this time.  Additionally, defendant's records indicate that he only incurred one disciplinary infraction during this term of incarceration [Sealed Doc. 118-9].[2]  The Court also reiterates that, during his incarceration, defendant took a number of educational and/or vocational courses, and maintained a number of job assignments, including UNICOR job assignments [Sealed Doc. 118-5, p. 1; Sealed Doc. 118-6].  Moreover, while on home confinement,

---

[2] This document also reflects that defendant incurred disciplinary infractions in 2010 and 2001 [Sealed Doc. 118-9, p. 2].  However, it appears that those infractions would have been incurred during defendant's incarceration on a prior federal conviction [*See* PSR ¶ 28 (indicating that defendant was incarcerated on his conviction in Case No. 2:99-CR-3 from at least 2000 to 2013)].

13

defendant has maintained compliance with conditions and maintained employment, suggesting defendant will be able to successfully reintegrate into society.

Significantly, the Court also notes that defendant will remain subject to a five-year term of supervised release [*See* Doc. 56]. During this time, he will be required to comply with a number of conditions, only slightly less restrictive than his current conditions of home confinement. It is imperative that defendant comply with all conditions of supervised release, including remaining drug-free, abstaining from other criminal activity, and complying with all instructions of the probation officer. The Court would impress upon defendant that, failure to comply with the requirements of supervised release may result in revocation of his supervised release and further incarceration.

Ultimately, having considered the relevant § 3553(a) factors and the record before it, the Court finds that these factors support defendant's compassionate release. The exhaustion requirement has been satisfied, an extraordinary and compelling reason exists, and the applicable § 3553(a) factors support compassionate release; therefore, the Court finds compassionate release to be appropriate. Defendant's motion for compassionate release [Sealed Doc. 118] is hereby **GRANTED**.

## III. Conclusion

For the reasons set forth more fully above, defendant's motion for compassionate release [Sealed Doc. 118] is **GRANTED** and defendant's sentence is **REDUCED** to <u>time served</u>. Except as otherwise provided in this order, all provisions of the amended judgment dated January 19, 2016 [Doc. 56] shall remain in effect.

IT IS SO ORDERED.

<u>s/ Thomas A. Varlan</u>
UNITED STATES DISTRICT JUDGE